KRAFT'S ADM'RS VS. HURTZ & JUNGK.

1. A carpenter executes work for a butcher, to be paid for in fresh meat, no time, place, or kind of meat for payment being specified. After the work is done, the carpenter receives at divers times at the butcher's stall, such meat as he then needed. Held, that the meat was payable at the butcher's stall, in such quantities as the carpenter might need, and the butcher have on hand.

2. On an appeal from a J. P., his transcript can not be so amended as to introduce a new plaintiff.

## APPEAL from St. Louis Circuit Court.

PRIMM & WHITTELSEY, *for Appellants, insist:*

1. That the court below erred in permitting the record and proceedings of the magistrate to be amended. *No cause was shown why* such amendment should be permitted.

There was nothing before the court to show that the interlineations made by the magistrate were conformable to the record, process and proceedings before him; on the contrary, the interlineations, changes, and additions, were made by him upon original papers, the bill of items and the summons.

By these, so called amendments, the magistrate *falsified the record.* The constable did not serve that disfigured and changed writ of summons on the defendant, Kraft, and Kraft did not appeal from a judgment in favor of Hurtz and Jungk, and in fact no such judgment was rendered.

There is no law which authorizes amendments of process and proceedings to be made *conformably to the facts of the case,* and yet such was the motion which the court sustained. There is no law which in such a case will authorize the introduction of *new parties plaintiffs* in the suit. See Rev. Code, p. 670, sec. 14, 18; Ibid, p. 826, sec. 1, *et seq.*

2. The court erred in its instructions given to the jury, and erred in refusing the instructions asked for by the defendant Kraft.

The testimony does not disclose, that either *time or place* were fixed in the contract for the delivery of meat. On the contrary, the only rational conclusion to be drawn from the testimony is that the meat was to be received in small quantities at Kraft's stall, and at such times as suited the wants of Hurtz & Jungk. A different conclusion would place Hurtz & Jungk in the preposterous predicament of being compelled to receive *at one time,* if Kraft had chosen to do so, in compliance with this version of the contract, some two hundred and fifty dollars worth of any kind of fresh butcher's meat.

There is no evidence that Kraft ever failed to comply with any demand for meat, made by *Hurtz & Jungk,* or any person in their behalf.

MCBRIDE, J., *delivered the opinion of the Court.*

This was an action on an open account for work and labor done, originally brought before a justice of the peace for St. Louis county, where the plaintiff Jungk obtained judgment; an appeal was taken to the Circuit

Court, when upon a trial *denovo* in that court the plaintiff again recovered judgment. The defendant moved for a new trial, assigning the usual reasons, which being overruled, he excepted to the opinion of the court, and appealed to this Court.

It appears from the bill of exceptions that the account filed before the justice was in the name of "Henry Kraft to Augustus Jungk, Dr." That the affidavit for the purpose of obtaining a builders lien, is in the name of the same parties, as well as all the subsequent proceedings in the justices' court and in the Circuit Court, up to the trial term in the Circuit Court, when on motion of the plaintiff's attorney, leave was given the justice to amend his judgment and proceedings, "so as to conform to the account filed before said justice of the peace, and also in conformity to the facts in the case." Thereupon the justice amended the record and proceedings by inserting before the name of Jungk, where it occurs, the words "Hurtz and Jungk to the use of."

The defendant having been examined as a witness on behalf of the plaintiff, testified, that he had employed Hurtz and Jungk to do carpenter's work for him, and was to pay them in meat, he being a butcher, having a slaughter house in the city of St. Louis, and a stall in the centre and south market house. That the plaintiff had usually obtained meat from him at his stalls, by small quantities, until a short time before the commencement of this suit, when the father-in-law of Jungk called at his slaughter house for a quarter of beef, which he could not furnish, not having that quantity on hand—that some meat was got by plaintiff at his stall afterwards—that no particular contract was made as to the place where the meat was to be furnished, but that he supposed it was to be furnished at his stall in either market. Before the commencement of this suit, a settlement was had, and he fell in debt to the plaintiff about $80, to be paid in meat as aforesaid, which balance he has always been ready and willing to pay in meat such as he had—that he had never refused to deliver meat to the plaintiffs or to their order whenever he had it.

Thereupon the court instructed the jury as follows:

1. If the jury believe from the evidence that the plaintiff requested the defendant to furnish beef under the agreement spoken of by the defendant in his testimony, and that the defendant neglected or refused to deliver it upon such request, then and in such case the defendant is liable in this action for the whole amount that was due the plaintiff at the time of the commencement of this suit.

If no place was fixed upon by the parties for the delivery of the beef,

then it was the duty of the defendant to deliver it or offer to deliver it at the residence or place of business of the plaintiff.

The defendant asked adverse instructions, which the court refused to give.

Two questions arise on the record. 1. The leave given to the justice of the peace to amend the record and proceedings. 2. The law declared in the instructions.

Great latitude has been taken by the courts in permitting amendments to be made in the record and proceedings had before justices of the peace, for the purpose of reaching the merits of the case and doing justice between the parties litigant, on a trial anew in the Circuit Court. This is the spirit of our legislation on the subject of appeals from the magistrates courts; for it is declared by statute that upon the return of the justice being filed in the clerk's office, the court shall be possessed of the cause, and shall proceed to hear, try and determine the same anew, without regarding any error, defect or other imperfection in the proceedings of the justice. R. C., 1845, sec. 13, page 670.

This provision, however, has not been construed to authorize the introduction of a new party to the record, for there is another provision which declares that the same cause of action, and no other, that was tried before the justice, shall be tried before the Circuit Court upon appeal; sec. 18. Where new plaintiffs are introduced by an amendment in the Circuit Court, it cannot be either the same *case,* or the same cause of action, which was tried before the justice. Indeed, the failure to sue in the name of the proper parties, may have been the ground of his defence in the justice's court, and forced him to appeal to the Circuit Court.— Although there was a fatal error from which an appeal might well be taken, still it would not avail the defendant if in the Circuit Court an amendment could be made curing the error and subjecting him to the costs of the appeal, as well as the other costs in the case. Whilst therefore the Circuit Court has, and when occasion calls for it, should exercise liberally the power of permitting amendments in the records of justices of the peace, for the furtherance of justice, it should not permit them to be made to the prejudice of either of the parties in a matter of substance.

The Circuit Court committed error also in giving the second instruction asked for by the plaintiff. We see no reason to withdraw this case from the general rule of law governing contracts with mechanics and others who have fixed places or habitations for carrying on their trades or occupations. We are of opinion that the stall of the butcher is the place where meat is properly deliverable, if there is no other place desig-

nated in the contract. The conduct of the parties aside from other considerations, which would apply with peculiar force in this case, settles the understanding of the parties as to the place where the beef was to be delivered.

Suppose we assume, however, that the residence of the plaintiff was the place of delivery; the question would arise, how much meat and of what description, should the defendant daily, tri-weekly or weekly, deliver to the plaintiff? It would be unreasonable to require the butcher to take with him a beef, a shoat, a veal, and a mutton, so as to be prepared to furnish the plaintiff the particular kind and quantity of meat which he wanted at the time; hence the plaintiff must go to his stall, and select the quality and quantity which he then wants, and being there, no reason is perceived why he may not as well take it home with him, as to impose the trouble and labor on the butcher; or we must leave to the discretion of the butcher the quality, description and quantity to be furnished by him at such times as he sees proper to deliver it, or we must require that he deliver the whole amount of his contract at once. This would no doubt be objected to by the plaintiff, for it might be a season of the year when it would be difficult and troublesome to preserve $228,40 worth of fresh meat; and besides, it would be furnishing the meat more abundantly than was contemplated by them at the time of contracting.

For the foregoing reasons, the judgment of the Circuit Court ought to be reversed.